UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HARCO LABORATORIES, INC. ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:01CV1277(AWT) |
| ) | |
| vs. ) | |
| ) | |
| GOODRICH CORPORATION, and ) | |
| ROSEMOUNT AEROSPACE INC. ) | |
| ) | March 22, 2004 |
| Defendants. ) | |

### ROSEMOUNT'S MEMORANDUM IN OPPOSITION TO HARCO'S REQUEST FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM REGARDING ROSEMOUNT'S MOTION FOR SUMMARY JUDGMENT AS TO HARCO'S FRAUD CLAIM

#### I.  INTRODUCTION

Rosemount Aerospace Inc. ("Rosemount") opposes Harco Laboratories, Inc.'s ("Harco") request for leave because Harco has not provided any additional facts or law that support its case. Harco's supplemental memorandum focuses on the Purdue case. As shown below, the Purdue case mirrors case law already provided and supports the legal proposition cited by Rosemount in its previous briefs: contentions to the Patent and Trademark Office (PTO) that an alternative shape "could" be designed need not be supported by actual proof that each alternative design was in fact developed. Statements using the term "could" are understood to be expressions of opinions about what could be done, and are not representations that something was done in fact.

All of the statements by Rosemount to the PTO at issue involve use of "could" language that clearly indicates the statements were hypothetical and based on judgment, rather than actual designs made or work completed. Unlike in Purdue, Rosemount's theoretical examples were presented in the present tense, and thus specifically recognized as proper by the Purdue case and Rosemount's previously cited case law. As a matter of law, Harco's fraud claim should be dismissed with prejudice.

## I.     SUMMARY OF FACTS

Harco's Complaint and First Amended Complaint contain a single sentence relating to fraud: "Upon information and belief, Defendants misled the United States Trademark Office with respect to the functional aspects of its design." Harco Complaint ¶ 17. Rosemount served Harco with a contention interrogatory requesting the full factual basis for the claim. In response, Harco merely cited the prosecution history of Rosemount's trademark registration in general, and provided no specific identification of the allegedly misleading statements and no evidence supporting its contention that any of the statements were misleading.

After Rosemount moved for summary judgment, Harco moved to amend the complaint and opposed the motion. It cited then, and cites again in its supplemental memorandum, statements by Donald Thompson to the PTO indicating that certain design changes "could" be made. See, e.g., Harco Supp. Memo at 4, citing Thompson Decl. ¶¶ 5-6. In fact, every paragraph of the Thompson Declaration cited by Harco in its supplemental memorandum uses the term "could" to describe possible design changes. Id.

In the earlier-filed summary judgment papers, Rosemount provided unrebutted expert reports of Dr. Charles Willcox and Matthew Simchak that corroborated Thompson's assertions that these alternatives "could" be designed. Harco provided no evidence, expert or otherwise, to the contrary. Rather, at paragraph 22 of its Complaint, Harco admitted that alternative designs were available. Harco Complaint ¶ 22. Moreover, Harco provided no evidence that Thompson or Rosemount deliberately misled the PTO. Purdue confirms that, on the undisputed facts here, Rosemount's summary judgment motion should be granted.

## II.   ARGUMENT

A. **Purdue is Consistent With Cases Previously Cited by Rosemount Which Hold Statements that Something "Could" be Done are Opinions or Judgments and not Representations that an Action was in Fact Taken.**

Harco has not provided any additional facts or law that support its case. Indeed, Purdue Pharma L.P. v. Endo Pharms., Inc., 2004 U.S. Dist. LEXIS 10, *67-68 (S.D.N.Y. January 5, 2004) (Attached hereto as Ex. A), the case Harco cites, is a patent case that relies on many patent statutes and regulations not directly applicable to trademark applications. Moreover, on the issue of most relevance here, Purdue provides nothing new as it is totally consistent with the law previously cited by Rosemount. Harco's motion to leave to file a supplemental memorandum should be denied. However, if leave is granted, Harco's supplemental memorandum changes nothing and Rosemount's motion for summary judgment should be granted.

Purdue is consistent with Rosemount's previously cited case law. Specifically, Rosemount's reply brief, at page 7, cited the Dial-A-Mattress case. That case involved a statement to the PTO by the applicant in a trademark application prosecution that customers "could do" something. Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1330, 1353 (E.D.N.Y. 1994). The court held the statement was not fraudulent, because there was no proof that customers could not take the action at issue, and the statement was not a representation that customers had in fact taken such action. Id.

Purdue is consistent with the Dial-A-Mattress case. In contrast with Dial-a-Mattress, however, the patentee in Purdue repeatedly used precise and quantified statements that were not supported by actual research, which resulted in the court's finding of inequitable conduct. Purdue, 2004 U.S. Dist. LEXIS 10 at *67-68. Specifically, the patentee repeatedly stated that he "surprisingly discovered" that a certain patented combination worked "in approximately 90% of

3

patients." Id. at *74.  Moreover, the patentee stressed its discovery was of "extreme clinical importance." Id. at *75.  The discovery, which was worded as if it proof-positive tests had actually been conducted, though they had not, was mentioned so many times in the patent that the court construed the patent claims based on the representations.  Id. at *76.

Despite the precise and quantified nature of the statements, it turned out that the patentee had conducted no clinical tests or studies and had no documents supporting its statements. Rather, the statements were based on "insight."  Id. at *70.  The court's finding of inequitable conduct was premised on four key factors not present in this case.  The court found the statements:

    1)    included concise, quantified terms;

    2)    were presented in the past tense;

    3)    were absolutely critical; and

    4)    were labeled a "discovery" as an argument for patentability.

Id. at *77.  The patentee's use of the word "discovery" demonstrated to the PTO that an invention had indeed taken place.  Use of that word when no discovery had actually occurred was the impetus for the inequitable conduct finding.

The Purdue Court explained, however, that *predicted* test results and *prophetic* examples "cannot" be the basis for finding inequitable conduct in patent cases, as the PTO explicitly permits such examples.  Id. at *85 (emphasis added), citing The Manual of Patent Examining Procedure ("MPEP") § 608.01(p) and Hoffmann-La Roche, Inc. v. Promega Corp., 323 F.3d 1354, 1377 (Fed. Cir. 2003) (Newman, J., dissent).  Section 608.01(p) provides:

> Simulated or predicted test results and prophetical examples (paper examples) are permitted in patent applications.  Working examples correspond to work actually performed and may describe tests which have actually been conducted and results that were achieved.  Paper examples describe the manner and process of making

4

an embodiment of the invention which has not actually been conducted. Paper examples should not be represented as work actually done. No results should be represented as actual results unless they have actually been achieved. Paper examples should not be described using the past tense.

MPEP § 608.01(p) (8th Ed. 2003).

The Purdue Court also noted the accused infringer's expert testimony regarding the proper language to use when theoretical judgments or insights are made to the PTO. Specifically, the court noted that "an insight or theory should be described in the present tense or in language like 'can be done,' 'could be done,' something that imports the notion to the reader . . . and particularly the Examiner that something has not yet been actually done or actually reduced to practice." Id. at *73, citing MPEP § 2004.8 (8th Ed. 2003). The text of MPEP Section 2004.8 is set forth below:

> Care should be taken to see that inaccurate statements or inaccurate experiments are not introduced into the specification, either inadvertently or intentionally. For example, stating that an experiment 'was run' or 'was conducted' when in fact the experiment was not run or conducted is a misrepresentation of the facts. No results should be represented as actual results unless they have actually been achieved. Paper examples should not be described using the past tense. Also, misrepresentations can occur when experiments which were run or conducted are inaccurately reported in the specification, e.g., an experiment is changed by leaving out one or more ingredients.

MPEP § 2004.8 (8th Ed. 2003) (internal citations omitted).

**B.    All of the Statements Harco Cites Were Opinions by Rosemount, not Representations of Actual Tests.**

None of Donald Thompson's statements cited in Harco's memorandum were based on precise, quantified terms. As shown below, Mr. Thompson's statements were hypothetical judgments based on Mr. Thompson's reasoning at the time the statements were made:

> 5.    The overall configuration of the Model 102 Total Temperature Sensor which is the subject of this trademark application *could be* significantly changed, and still be an equally feasible, efficient and competitive alternative design. For example, the corners of the air scoop on the upper end of the probe *could be* rounded. The inlet configuration of the air scoop *could also be* changed from that of the present Model 102 Total Temperature Sensor. The back of the air scoop *could be* a different shape. For example, the strut *could be* made in the shape of an air foil, but having the air foil swept forward, or swept rearward. In addition,

5

the base plate *could have* an entirely different dimension, or an entirely different geometric shape, such as an oval or square.

6.  All of these changes *could be* made to entirely change the overall appearance of the 102 Sensor Probe, while still maintaining a probe which is equally feasible, efficient and competitive.

Cook Ex. J (Declaration Under 37 C.F.R. §2.41 of Donald I. Thompson) (emphasis added). Other statements cited by Harco show this same trend; that sensor designers and manufacturers *could* or may be able to modify the Rosemount Model 102 Sensor (or develop other sensors) that are feasible, efficient and competitive in the marketplace. These statements are clearly distinguishable from the statements made in the Purdue case and cannot be a basis for Harco's fraud claims.

Rosemount's statements to the PTO cannot give rise to a fraud claim because they were theoretical insights described in the present tense. There is no disagreement that Donald Thompson's statements were based on his judgment at the time the statements were made to the Trademark Office. See Harco Memorandum at 8. Moreover, each of Donald Thompson's statements quoted by Harco as the basis for their purported misstatements involve use of the word "could" or other language that clearly indicates the statements were hypothetical, rather than experimentally-verified statements. The wording is unambiguously presented as a theoretical example. There is no disagreement regarding the applicable facts. As such, there is no basis for finding fraud.

## IV.  CONCLUSION

Purdue supports the proposition that Donald Thompson's statements cannot support Harco's fraud claim. Mr. Thompson's statements were presented as theoretical possibilities, not discoveries based on precise quantified results. Because Harco admits the statements were based

6

on Mr. Thompson's judgment, and has no proof that his statements were either false or intended to mislead, there is no genuine issue of material fact and this Court should grant summary judgment in Rosemount's favor on Harco's fraud claims. The fraud claims should be dismissed with prejudice.

**GOODRICH CORPORATION and ROSEMOUNT AEROSPACE INC.**

By their attorneys,

_____
James Mahanna (ct24681)
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, CT 06103-3499
Tel. (869) 275-0100
Fax: (806) 275-0343
jmahanna@dbh.com


Daniel W. McDonald (MN 168580, ct23281)
Joel E. Bergstrom, (MN 298955, ct25647)
William D. Schultz (MN323482, ct25198)
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2215
Ph. (612) 332-5300
Fx. (612) 332-9081

Attorneys for Defendants

7

**CERTIFICATION**

 THIS IS TO CERTIFY that a copy of the foregoing was mailed this 22nd day of March, 2004, via first class mail, postage prepaid, to:

Wesley W. Whitmyer, Jr.
Stephen McNamara
Arlana S. Cohen
St. Onge Steward Johnston & Reens LLC
986 Bedford Street
Stamford, CT 06905

                James Mahanna