UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 MAY -4 P 3: 24

U.S. DISTRICT COURT
HARTFORD, CT.

HARCO LABORATORIES, INC. )
) 
Plaintiff, ) Civil Action No. 3:01CV1277(AWT)
)
vs. )
)
GOODRICH CORPORATION, and )
ROSEMOUNT AEROSPACE INC. ) May 4, 2004
)
Defendants. )

## ROSEMOUNT'S MEMORANDUM IN OPPOSITION TO HARCO'S REQUEST FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM REGARDING HARCO'S MOTION FOR SUMMARY JUDGMENT RE FUNCTIONALITY

### I. INTRODUCTION

Rosemount Aerospace Inc. ("Rosemount") opposes Harco Laboratories, Inc.'s ("Harco") request for leave because Harco has not provided any additional facts or law that support its case. Harco's supplemental memorandum focuses on the Honeywell case. As shown below, the Honeywell decision regards the application of the functionality doctrine when the claimed trade dress covers the same features as an expired utility patent. That is not applicable to the case at hand. Harco's newly cited case is not on point and should not be considered.

Unlike in Honeywell, Rosemount's trade dress does not encompass the features disclosed in a utility patent. Rather, Rosemount's registered trade dress covers the ornamental features that identify Rosemount as the single source of Rosemount's Total Air Temperature ("TAT") sensor. Rosemount's trade dress is not functional. Harco's motion for summary judgment on the issue of functionality has no merit and should be denied.

## I. SUMMARY OF FACTS

Harco sought summary judgment on the grounds that the elements and appearance of Rosemount's TAT sensor are functional and do not constitute a trademark or trade dress. In its moving brief, Harco alleged that Rosemount's TAT sensor was subject to a utility patent. (See Harco Memo.[1] at 5.) Harco was incorrect.

Rosemount, in its opposition papers, showed that, while two patents covered the internal components of Rosemount's TAT sensors, no patent covered the claimed trade dress. (See Rosemount Memo.[2] at 8-9.) Specifically, U.S. Patent No. 2,970,475 ("the '475 Patent") regards an entirely different TAT sensor with a distinct appearance. (See Rosemount Memo. at 9; Exhibit A attached hereto.) The images below show the '475 Patent next to Rosemount's registered trade dress:

         

Drawing in '475 Patent                Rosemount's Registered Trade Dress

---

[1] Plaintiff's Memorandum in Support of Motion for Summary Judgment Re Functionality.
[2] Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment That Defendants' Trademark is Functional.

Rosemount's trade dress is not covered by the drawings provided in the '475 Patent. Moreover, none of the claims set forth in the '475 Patent are directed to external ornamental features. (See Exhibit A.)

Rosemount also refuted Harco's allegations that U.S. Patent No. 5,302,026 ("the '026 Patent") renders Rosemount's trade dress functional. Indeed, Rosemount showed that the '026 Patent is directed exclusively to the internal components of the sensor. (See Rosemount Memo. at 9.) The drawings of the '026 Patent are merely cutaways of the internal features of the TAT sensor. (See Exhibit B attached hereto.) Moreover, the claims set forth in the '026 Patent do not discuss the external appearance. (See id.) Rosemount's registered trade dress is not the subject of a utility patent and the Honeywell case does not apply.

## II.   ARGUMENT

### Honeywell is not Applicable to this Case Because Rosemount's Trade Dress is not Covered by A Utility Patent.

Harco has not provided any additional facts or law that support its case. Indeed, ECO Mf'g v. Honeywell Int'l, Inc., 295 F. Supp. 2d 854 (S.D. Ind. 2003), the case Harco cites, is not relevant to the case at hand because it involves trade dress that is also covered by claims in an expired utility patent. That is not the issue in this case. Harco's motion for leave to file a supplemental memorandum should be denied. However, if leave is granted, Harco's supplemental memorandum changes nothing and Harco's motion for summary judgment should be denied.

The Honeywell case regards Honeywell International, Inc.'s ("Honeywell") round thermostats. In 1946, Honeywell received U.S. Patent No. 2,394,920 ("the '920 Patent") covering the round thermostat. Id. at 859. (See Exhibit C attached hereto.) The claims in the '920 Patent were directed towards the round shape of the thermostat. (See Exhibit C.) Claim 13,

3

for instance, called for "a spherical cover surrounding said bimetallic elements and switch arms, said spherical cover having a concaved inner surface and a convexed outer surface." (See id., p.7, lns. 20-24.) Claim 18 called for "a curved cover for the said condition responsive device spaced from said base providing an air passage around the entire periphery of the cover through which air may flow. (See id., p. 7, lns. 38-43.) Claim 23, reproduced in full below, identified the circular convex shaped cover of the thermostat as a functional component of the device:

> A unitary air condition responsive device comprising, in combination, **a round base**, air condition responsive means mounted upon said base, control means actuated by said air condition means, **a circular convex shaped cover for enclosing** said responsive means having its center substantially coinciding with the center of said base, the cover comprising a stationary portion and a rotatable portion having a circular periphery, the axis of rotation of said rotatable portion coinciding with the center of said cover as a whole, means for mounting said cover on said base, and means actuated by said rotatable cover portion for adjusting the value of the condition at which said air condition responsive means actuates said control means.

(See id., p. 8, lns. 10-25.) The Honeywell Court found that "it is clear that Claim 23 protected the shape of the round thermostat." 295 F. Supp. 2d at 860. Additionally, the drawings of the '920 Patent and Honeywell trade dress, reproduced below, both cover the external mechanism of the thermostat:

   

Honeywell Patent Drawings                Honeywell Trade Dress

The Honeywell court also examined the patentee's arguments to procure the utility patent. Id. In order to overcome prior art, Honeywell persuaded the Patent Office that the circular,

4

convex shape of its thermostat was novel and useful. Id. Specifically, Honeywell argued that "[t]he cover being of a circular convex shape and enclosing the thermostat and control means, presents a thermostat control means which is not only attractive in appearance but has great utility from a safety standpoint." Id. at 860-61. Because Honeywell's trade dress covered the identical components that were subject to the claims in an expired utility patent, the round thermostat was deemed functional. Id. at 870.

The Honeywell court relied on the Supreme Court's TrafFix Devices decision, which taught that a utility patent is "strong evidence that the features therein claimed are functional." Id. at 857 (quoting TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 29 (2001)). This case does not involve the situation in TrafFix or Honeywell. Rather, as amply argued in Rosemount's opposition brief, Rosemount's trade dress covers the outside ornamental features of Rosemount's TAT sensor. Indeed, this case is more akin to recent district court decisions from Illinois and Maryland.

"Because the TrafFix decision dealt with trade dress protection sought for the exact mechanism covered by an expired utility patent, and because the features sought to be protected here are not covered by expired patents, the TrafFix decision is not controlling." Logan Graphic Prod., Inc. v. Textus USA, Inc., No. 02 C 1823, 2003 U.S. Dist. LEXIS 7534, *10 (N.D. Ill. May 2, 2003). (See Exhibit D attached hereto). The Logan case dealt with the trade dress of mat-cutting products. Id. at *3-4. Logan sought to establish trade dress rights in the overall look of its mat-cutting tools including, among other things, the color scheme, shape, size and style of the tools. Id. Similar to Harco, the infringer asserted that the tools were not entitled to trade dress protection because the tools were fully functional components that were the subjects of two Logan patents. Id. at *4. The magistrate judge, and then the district court, disagreed. Id. at *7,

10. The court found that the asserted utility patents did not protect the same features Logan was claiming as its trade dress. "[U]nlike the case in TrafFix, in our case functionality has not been established by the existence of expired patents." Id. at *12.

The Leviton Court used the same analysis as Logan in finding that functionality based on a utility patent is only established when the asserted trade dress protection is also covered by the central advance of the patent. Leviton Mf'g Co., Inc. v. Universal Sec. Instruments, Inc., No. AMD 01-3855, 2004 U.S. Dist. LEXIS 2588, *12-13 (D. Md. February 19, 2004). (See Exhibit E attached hereto.) "The 'central advance' of the '894 patent is not the outward appearance, . . . but rather its unique switching mechanism . . . . As a result, Leviton's claim for trade dress infringement is not defeated by the mere existence of [a utility] patent." Id. at 13.

Rosemount's trade dress of its TAT sensor cannot be deemed functional based on the mere existence of a utility patent, especially when the trade dress covers features distinct from any utility patent. Indeed, as fully discussed in Rosemount's opposition papers, the '475 and '026 Patents do not cover the exterior ornamental design of Rosemount's TAT sensor. (See Rosemount Memo. at 8-9.) Rather, the patents cited by Harco go to the internal components of the TAT sensor. Honeywell does not apply to this case. As a matter of law, Rosemount's asserted trade dress is not functional based on the utility patents.

6

## IV. CONCLUSION

Honeywell is not applicable to the present case because it involves trade dress that is also covered by the claims of a utility patent. Moreover, Rosemount's asserted trade dress is not covered by any utility patent. Harco's motion should be denied.

                    **GOODRICH CORPORATION and ROSEMOUNT AEROSPACE INC.**

                    By their attorneys,

                    James Mahanna (ct24681)
                    DAY, BERRY & HOWARD LLP
                    CityPlace I
                    Hartford, CT 06103-3499
                    Tel. (869) 275-0100
                    Fax: (806) 275-0343
                    jmahanna@dbh.com

                    Daniel W. McDonald (MN 168580, ct23281)
                    Joel E. Bergstrom, (MN 298955, ct25647)
                    William D. Schultz (MN323482, ct25198)
                    MERCHANT & GOULD P.C.
                    3200 IDS Center
                    80 South Eighth Street
                    Minneapolis, Minnesota 55402-2215
                    Ph. (612) 332-5300
                    Fx. (612) 332-9081

                    Attorneys for Defendants

## CERTIFICATION

      THIS IS TO CERTIFY that a copy of the foregoing was mailed this 4th day of May, 2004, via first class mail, postage prepaid, to:

Wesley W. Whitmyer, Jr.
Stephen McNamara
Arlana S. Cohen
St. Onge Steward Johnston & Reens LLC
986 Bedford Street
Stamford, CT 06905

                                                                      _____
                                                                       James Mahanna